UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CORTEZ M. OLIVER,             )     Case No. 5:13CV2011
                                     )
         Petitioner,           )     JUDGE JOHN R. ADAMS
                                     )
         v.                    )     Magistrate Judge George J. Limbert
                                     )
BENNIE KENNEDY, WARDEN[1],   )     **Report and Recommendation**
                                     )     **of Magistrate Judge**
         Respondent.       )
                                     )

On September 4, 2013[2], Petitioner Cortez M. Oliver ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Portage County, Ohio Court of Common Pleas, during his trial and sentencing for one count of murder in violation of Ohio Revised Code ("ORC") §2903.02(B), an unclassified felony; one count of aggravated burglary in violation of ORC §2911.11(A)(1), a felony of the first degree; and one count of aggravated robbery in violation of ORC 2911.01(A)(3), a felony of the first degree.  On January 31, 2014, Respondent Bennie Kennedy, Warden of Grafton Correctional Institution filed a motion to dismiss habeas petition predicated upon procedural default. ECF Dkt. #7.  No traverse was filed.

For the following reasons, the undersigned RECOMMENDS that the Court GRANT the motion to dismiss petition, ECF Dkt. #7, and DISMISS the instant petition in its entirety with prejudice:

---

[1]Petitioner is housed at Grafton Correctional Institution, where Bennie Kelly is the warden.  See www.drc.ohio.gov "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Bennie Kelly as respondent.

[2]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

I.    **SYNOPSIS OF THE FACTS**

The Eleventh District Court of Appeals of Ohio set forth the relevant facts on direct appeal.

*State v. Oliver*, 2012 WL 121149 (11th Dist.). These binding factual findings "shall be presumed to

be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.

1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶ 3} Appellee, the state of Ohio, called the following witnesses who collectively established that appellant devised a deceptive plan in order to gain entry into Richard Lowther's residence for the purpose of stealing from him which resulted in his death.

> {¶ 4} Bobby Nolan testified that on the afternoon of July 1, 2009, appellant asked him and Jon Dukes if they wanted to "hit a lick," a slang term for a robbery. Nolan and Jon Dukes agreed to participate that night in robbing Lowther of $50,000 and a valuable coin collection. Nolan and Jon Dukes were assured by appellant that the robbery would be easy because Lowther was an elderly man and would be asleep. Later that night, Nolan backed out of the robbery because he learned that the group would not be using guns and that a "white chick," Jodi Fetty, would be involved.

> {¶ 5} James Oaks testified that he rented a house on Lowther's property and the two were neighbors for over five years. During the night of the incident, Oaks recalled waking to the barking and snarling sound of his dog. Oaks looked out his bathroom window in the direction of Lowther's residence. He observed a man and a woman leaving the side of Lowther's house, carrying what appeared to be plastic coin cases. Oaks heard voices coming from the back of Lowther's home. Oaks stuck his head out of his back door and heard Lowther say, "what are you doing to me?" Oaks grabbed a stick and proceeded to Lowther's house. Oaks swung at and tried to stop the man; however, he ran away. Oaks only had a split second glance of the male, but described the female as short, white, medium to heavy build, with blondish, shoulder length hair. Oaks checked on Lowther and called 9-1-1.

> {¶ 9} Lieutenant Paramedic Michael Lee with the Rootstown Fire Department testified he was the first dispatched to the scene at approximately 2:34 a.m. He discovered Lowther lying on his porch. Lowther desperately wanted to get up but was unable to feel or use his legs. Paramedic Lee testified that Lowther told him he had fallen asleep while watching television and woke up to the sound of his doorbell. Lowther informed Paramedic Lee that a small, petite, brunette girl was at his door, stated she had car trouble, and wanted to use his phone. After Lowther let her inside his home, he was attacked from behind by a very tall, big, black man. His attacker grabbed Lowther by his mouth, twisted and threw him to the ground. On the way to the hospital, Paramedic Lee reported that Lowther had no feeling from the waist down and had the actual indentation of half a boot print on his left flank.

> {¶ 7} Officer Kevin Nicolino with the Portage County Sheriff's Office testified that when he arrived at the scene, he observed quarters in the street. He briefly spoke with Lowther and Oaks. Officer Nicolino put out a report to "be on the lookout" ("BOLO"), advising dispatch that suspects included a white female with blond hair

and a black male who were seen running from the scene with a large amount of coins.

{¶ 8} Detective Scott Kriegar with the Ravenna City Police Department testified that he was working an off-duty security detail at the Ravenna Giant Eagle when Officer Nicolino's BOLO came across the radio. Shortly after receiving that information, Detective Kriegar saw Fetty, the white female involved in the incident, exit a vehicle carrying what appeared to be a very heavy Crown Royal whiskey bag. Fetty asked Detective Kriegar if customer service could cash in some change. He directed Fetty to the Coin Star machine. Believing Fetty was a possible match to the BOLO, Detective Kriegar contacted Officer Nicolino. He reported Fetty's presence at Giant Eagle and asked what types of coins were stolen. Officer Nicolino indicated that the coins were all late model statehood quarters. Detective Kriegar learned from the cashier that Fetty had deposited 740 quarters into the Coin Star machine. He then ordered the cashier to request identification from Fetty before providing cash on the Coin Star receipt. Detective Kriegar confirmed that Fetty fit the BOLO. He also observed that the driver of the vehicle that Fetty previously exited was a black male, and that another black male was seated in the back seat. At that time, Detective Kriegar called for backup assistance.

{¶ 9} Patrolman Jason Burrell with the Ravenna City Police Department testified that after he arrived at Giant Eagle, he stopped the vehicle in the parking lot. He stated that the driver of the car was identified as Darrell Dukes and the front seat passenger was identified as Fetty. Appellant was ultimately identified as the back seat passenger.

{¶ 10} Lieutenant Gregory Johnson, Chief of the Detective Bureau of the Portage County Sheriff's Office, testified that after he arrived at Giant Eagle, he interviewed both Fetty and Darrell Dukes. He ultimately released Darrell Dukes and arrested Fetty.

{¶ 11} Lieutenant Johnson's initial involvement with the case actually began earlier that morning when he went to Robinson Memorial Hospital. He photographed Lowther and recorded Lowther's interaction with the emergency medical team who attended to his injuries. The recording, which was played for the jury, included a conversation between Lowther and Dr. John Gusz, the trauma center physician. Lowther stated in the recording that he could not wiggle his toes, was injured by a guy who grabbed him and threw him on concrete, and had no feeling in the area of his abdomen. Dr. Gusz testified at trial that Lowther had suffered a significant spinal cord injury and was life-flighted to Akron City Hospital.

{¶ 12} Lieutenant Johnson also testified that appellant's keys were found in Darrell Dukes' vehicle. Lieutenant Johnson indicated that while he was interviewing Fetty at the station, appellant arrived to retrieve his keys. Lieutenant Johnson believed that appellant was somehow involved in the incident, so he instructed Detective Acklin to speak with him. Lieutenant Johnson ultimately placed appellant under arrest.

{¶ 13} On cross-examination, Lieutenant Johnson testified he did not notice any trauma to appellant's hands. He said that the boot tread pattern on Lowther did not match the tread pattern on the boots appellant later wore to the station, approximately four to five hours after the initial 9-1-1 called was placed. Lieutenant Johnson did not find any of appellant's blood on Lowther's clothing or in Lowther's house.

-3-

{¶ 14} Co-defendant Fetty testified that Darrell Dukes let Jon Dukes, appellant, and herself out of the car on Lowther's street. Appellant led the way to Lowther's house and told Fetty to knock on the door. She complied. Fetty pretended she had car trouble and needed to use the phone in order for appellant to be able to gain access into Lowther's residence so that he could steal from him. Lowther let her into his home. As Fetty dialed a random phone number, she heard a thud from the porch. She ran out of the side door toward the street. Fetty stated that appellant followed her, dropping coins as he ran into the street where Darrell Dukes was waiting in the car. In the car, Fetty questioned whether appellant had hurt Lowther. She testified that appellant responded that he had "de-bowed" him, a slang term for some sort of an assault. Fetty also stated that appellant argued with Jon Dukes in the car because Jon Dukes did not assist him in taking any "loot" from Lowther's house. According to Fetty, Jon Dukes said he had blood on his hands, but she did not see it. She testified that Darrell Dukes later drove her and appellant to Giant Eagle. She went inside the store to cash in the coins. After she returned to the car, Darrell Dukes was still in the vehicle but appellant, who was originally seated in the back seat, was gone.

{¶ 15} On cross-examination, Fetty alleged heavy drug and alcohol use on the night of the incident. Fetty admitted that she had lied in her previous statements to police because she was scared, intoxicated, and afraid of going to jail.

{¶ 16} Co-defendant Darrell Dukes testified that he agreed to drive appellant to the "lick" in return for $2,000. He testified that appellant told him that the "lick" was on an elderly guy who lived alone, had guns, and a safe with $50,000, but had a nearby neighbor so a lookout was necessary. According to Darrell Dukes, appellant and Jon Dukes were dressed in black and initially tried to get into Lowther's house but left because Lowther was awake and the lights were on in his home. Sometime later, Darrell Dukes testified that Fetty said she could get them into Lowther's house. Their plan was for Darrell Dukes to remain in the car, Jon Dukes to be the lookout, and appellant to "de-bow" Lowther and take his money. Darrell Dukes dropped off appellant, Fetty, and Jon Dukes. He waited about 10 minutes, then returned to the area to find appellant and Fetty running toward his car. The first thing Fetty said was that appellant "f* * *ed the dude up pretty bad." Appellant later argued with Jon Dukes in the car claiming that he did not assist him in the "lick." According to Darrell Dukes, Jon Dukes showed blood on his hands. Darrell Dukes testified that he later drove Fetty and appellant to Giant Eagle to cash in the coins. After Fetty went inside the store, Darrell Dukes said that appellant exited the car with a bag of crack and ran away after seeing the police. He testified that while in jail, he received a letter from appellant asking him to lie for him.

{¶ 17} On cross-examination, Darrell Dukes testified that he spent 26 days in the general population with his cousin, Jon Dukes, but said they did not discuss the case because he was mad at Jon for getting him arrested. He indicated that his main source of income before being arrested was from dealing drugs. Darrell Dukes stated he smoked a little marijuana on the day of the incident.

{¶ 18} A few weeks after the incident, Lowther passed away. Dr. Dorothy Dean, a Forensic Pathologist and Deputy Medical Examiner with the Summit County Medical Examiner's Office, performed Lowther's autopsy. She testified that the cause of Lowther's death was complications of spinal cord injury due to the blunt force trauma to his neck. Dr. Dean stated that Lowther had a separation between two of his backbones, fractures, and a corresponding spinal cord injury to the C-6 and C-7 area of his neck. She explained that Lowther's injury, between C-6 and C-7 of his cerebral vertebras, damaged his ability to control anything below his shoulder area. In addition to the loss of movement of his body, Lowther was unable to control his

-4-

breathing and required a breathing tube before he died. Lowther was also unable to eat, required a hose into his body to receive nutrition, and could not control his kidneys.

{¶ 19} After the close of the state's case-in-chief, appellant filed a Crim.R. 29 motion for acquittal, which was overruled by the trial court. The defense then presented its case.

{¶ 20} Bruce Miller testified that he owns the Well Doctor, a business which drills wells, installs pumps, and replaces well systems. He was also in the flea market business. Miller stated that appellant grew up with his kids and did some work for him a couple of times. Miller also knew Lowther from the flea market, who talked to Miller about his commemorative coin collection. On one occasion, Miller went with Robert Greyhouse to Lowther's residence to fix a plumbing problem. Lowther did not show Miller his coin collection. Miller stated he never spoke with appellant about Lowther's coin collection, the layout of Lowther's house, or Lowther's neighbor. Miller also testified that he was not part of any plan to receive 20 percent of the take from the robbery of Lowther's house. Miller admitted he was a recovering drug addict, had a criminal past, and was released from prison in 1999.

{¶ 21} Greyhouse testified that he worked for Miller at the Well Doctor and in his flea market business. Prior to the incident, he went with Miller to Lowther's residence. Greyhouse said that Lowther showed him and Miller his coin collection. Greyhouse stated that while he worked on fixing Lowther's water filter, Miller was alone with Lowther for about 40 minutes. Greyhouse believed that Miller was "up to robbing" Lowther. Greyhouse did not believe that appellant was involved in the incident at issue on his own, but was put up to it by Miller.

{¶ 22} Appellant invoked his Fifth Amendment right to not testify and the defense rested. Appellant did not renew his Crim.R. 29 motion for acquittal at the conclusion of all of the evidence.

*Id.* at *1-3.

## II.  **PROCEDURAL HISTORY**

### A.  **State Trial Court**

Petitioner was indicted by the July 2009 Term of the Portage County Grand jury for one count of murder in violation of ORC §2903.02(B)(Count One), one count of aggravated burglary in violation of ORC §2911.11(A)(1)(Count Two), and one count of aggravated robbery in violation of ORC 2911.01(A)(3)(Count Three).  ECF Dkt. #7-1.

Petitioner entered a plea of not guilty and the case was tried to a jury. Petitioner was convicted on all counts in the Indictment.  At the sentencing hearing on February 18, 2010, the trial court declined to merge the aggravated burglary and aggravated robbery convictions, and sentenced Petitioner to life imprisonment on Count One, and ten years on each of Counts Two and Three, with the sentences on each count to be served consecutively. ECF Dkt. #7-10.

**B.**      **Direct Appeal**

On September 16, 2003, Petitioner, through new counsel, filed a direct appeal in the Eleventh District Court of Appeals that raised the following assignments of error:

> 1. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY MAKING COMMENTS IMPLYING APPELLANT'S GUILT DURING INDIVIDUAL VOIR DIRE, THUS DENYING APPELLANT HIS RIGHTS TO DUE PROCESS. (T.P. 39, 45, 49, 57, 60, 68, 83, 85, 95, 99, 130, 137, 140, 150, 152, 156, 164, 166, 170, 172, 174, 189, 192, 194, 196, 198, 200, 202, 207, 210, 214, 221, 223, 227, 240, 246, 249, 252, 255, 257, 283, 292, 295, 303, 306, 308, 310, 312.)

> 2. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR, DENYING APPELLANT DUE PROCESS, WHEN THE COURT REFUSED TO REMOVE A POTENTIAL JUROR FOR CAUSE AS REQUESTED BY APPELLANT, THUS FORCING APPELLANT TO USE A PREEMPTORY CHALLENGE. (T.P. 108-114.)

> 3. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DENIED APPELLANT DUE PROCESS BY REMOVING A POTENTIAL JUROR FOR CAUSE OVER THE OBJECTION OF DEFENSE COUNSEL. (T.P. 67-79.)

> 4. THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF FELONY MURDER, AGGRAVATED BURGLARY, AND AGGRAVATED ROBBERY.

> 5. THE GUILTY VERDICTS OF MURDER, AGGRAVATED BURGLARY, AND AGGRAVATED ROBBERY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> 6. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY RULING AGGRAVATED ROBBERY AND AGGRAVATED BURGLARY WERE NOT ALLIED OFFENSES OF SIMILAR IMPORT.

> 7. THE TRIAL COURT ABUSED ITS DISCRETION BY SENTENCING APPELLANT TO MAXIMUM CONSECUTIVE SENTENCES FOR AGGRAVATED BURGLARY, AGGRAVATED ROBBERY, AND MURDER. (T.P. 28-29.)

> 8. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE FROM HIS TRIAL COUNSEL. (T.P. 39, 45, 49, 57, 60, 68, 83, 85, 95, 99, 130, 133, 137, 140, 150, 152, 156, 164, 166, 170, 172, 174, 189, 192, 194, 196, 198, 200, 202, 207, 210, 214, 221, 223, 227, 240, 246, 249, 252, 255, 257, 283, 292, 295, 303, 306, 308, 310, 706-708.)

ECF Dkt. #7-5. On January 17, 2012, the Court of Appeals affirmed the trial court's judgment, with the exception of the assignment of error challenging the merger of the aggravated burglary and aggravated robbery convictions in light of the Ohio Supreme Court's ruling in *State v. Johnson*, 128 Ohio St.3d 153 (2010). ECF Dkt. #7-7.

On January 31, 2012, Petitioner, through former trial counsel, submitted a resentencing brief to the Portage County Court of Common Pleas. ECF Dkt. #7-16. The State filed a response. ECF Dkt. #7-17. On February 15, 2012, the trial court held that the offenses of aggravated burglary and aggravated robbery were distinct offenses with a separate animus and were not allied offenses of similar import. Thus, the court concluded that the offenses do not merge, and there was no need to resentence Petitioner and his original sentence would remain the court's order. ECF Dkt. #7-18. Petitioner did not appeal the trial court's decision.

**C.     Application to Reopen**

On April 2, 2012, Petitioner filed an application to reopen his direct appeal ("*Murnahan* application") pursuant to Ohio Appellate Rule 26(B) in the Eleventh District Court of Appeals. In his *Murnahan* application, Petitioner argued that appellate counsel was ineffective for failing to assert the following assignments of error on direct appeal:

> 1. THE DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO CONDUCT ANY MEANINGFUL PRETRIAL INVESTIGATION REGARDING THE VICTIM'S SELF-EXECUTED-DECISION TO TERMINATE HIS OWN LIFE SUPPORT, WHICH CONSTITUTED AN INDEPENDENT, INTERVENING CAUSE IN HIS OWN DEATH.
>
> 2. THE DEFENDANT WAS WRONGFULLY CONVICTED OF THE CRIME OF MURDER, THUS DEPRIVING HIM OF HIS RIGHTS OF DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I, OF THE OHIO CONSTITUTION BECAUSE THE PROSECUTION WITHHELD EXCULPATORY EVIDENCE.

ECF Dkt. #7-19.

On March 8, 2013, the Eleventh District Court of Appeals issued a Decision and Entry denying Petitioner's application for re-opening as Petitioner had failed to set forth a colorable claim of ineffective assistance of appellate counsel pursuant to App.R. 26(b)(5). ECF Dkt. #7-20.

**D.** **Supreme Court of Ohio**

On April 19, 2013, Petitioner filed a *pro se* notice of appeal in the Supreme Court of Ohio. ECF Dkt. #7-21. In his memorandum in support of jurisdiction, Petitioner set forth the following propositions of law:

> 1. THE APPELLATE COURT [SIC] OF THE PREJUDICE OF APPELLANT TO HAVE EFFECTIVE ASSISTANCE OF APPELLANT COUNSEL GUARANTEED IN THE SIXTH AMENDMENTS.
>
> 2. THE DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT PREJUDICIALLY DEPRIVED [SIC] WHEN THE TRIAL COUNSEL FAILED TO CONDUCT ANY MEANINGFUL PRETRIAL INVESTIGATION REGARDING THE VICTIM'S SELF-EXECUTED DECISION TO TERMINATE HIS OWN LIFE SUPPORT, WHICH CONSTITUTES AN INDEPENDENT, AND INTERVENING CAUSE IN HIS OWN DEATH.
>
> 3. THE DEFENDANT WAS WRONGFULLY CONVICTED OF THE CRIME OF MURDER, THUS DEPRIVING HIM OF HIS RIGHTS OF DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS WHEN PROSECUTION WITHHELD EXCULPATORY EVIDENCE.

The State filed a response. ECF Dkt. #7-22. On July 24, 2013, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). ECF Dkt. #7-23.

## III.  **28 U.S.C. § 2254 PETITION**

The instant *pro se* petition was filed September 4, 2013. Petitioner presents the following grounds for relief:

> GROUND ONE: PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL TO PRESENT TESTIMONY AND EVIDENCE OF HIS ACTUAL INNOCENCE TO FELONY MURDER.
>
> SUPPORTING FACTS: THE PETITIONER WAS INVOLVED IN A BURGLARY AND ROBBERY WITH SEVERAL OTHERS, AND THE ROBBERY VICTIM RECEIVED A SEVERE NECK JURY [SIC]. HE WAS TRANSPORTED TO THE ROBINSON MEMORIAL HOSPITAL WERE [SIC] A CAT SCAN SHOWED A SPINAL CORD INJURY. HE WAS LIFE-FLIGHTED TO THE AKRON CITY HOSPITAL TO RECEIVE A SPINAL FUSION. THE OPERATION WAS A SUCCESS. THEN, IT APPEARS JUST DAYS LATER HE STARTING HAVING BREATHING PROBLEMS, AND PLACED ON A VENTILATOR. APPARENTLY, HE BECAME DISPIRITED OVER THE NEED FOR A VENTILATOR AND CONSULTED WITH FAMILY TO REMOVE THE VENTILATOR. APPARENTLY, THE FAMILY KNEW THIS MEANT MEDICAL SUICIDE AND STILL AGREED TO REMOVE THE VENTILATOR. APPARENTLY, HE DIED TEN TO TWELVE HOURS LATER OF HIS OWN CHOICE. THE TRIAL COUNSEL NEVER PRESENTED THE MEDICAL

-8-

EVIDENCE THAT HE DEMANDED REMOVAL THE LIFE SUPPORTING VENTILATOR, OR CALL THE FAMILY TO INVESTIGATE HIM PURSUING MEDICAL SUICIDE. THE DECISION BY THE ROBBERY VICTIM TO PURSUE MEDICAL SUICIDE IS UNFORESEEABLE VIEWED IN LIGHT OF ORDINARY EXPERIENCE.

GROUND TWO: PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHT TO HAVE SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT ON FELONY MURDER BEYOND A REASONABLE DOUBT.

SUPPORTING FACTS: PETITIONER WAS INDICTED AFTER RICHARD A. LOWTHER DIED FOR MURDER FROM THE PREDICATE OFFENSES OF AGGRAVATED BURGLARY AND ROBBERY INCLUDING RECKLESSLY INFLICTED OR ATTEMPTED TO INFLICT, SERIOUS PHYSICAL HARM. IN OHIO, THE VERY PURPOSE OF THE FELONY MURDER DOCTRINE IS TO UTILIZE THE PREDICATE OFFENSES AS A SUBSTITUTE FOR THE MURDEROUS INTENT AND RAISE AN UNINTENTIONAL KILLING TO THE LEVEL OF MURDER. THE EVIDENCE PROFFERED AT TRIAL DOES NOT SHOW THE PETITIONER ACTED WITH HEEDLESS INDIFFERENCE TO THE CONSEQUENCES AND DISREGARDS A KNOWN RISK THAT CAUSED THE RECKLESS HOMICIDE OF RICHARD A. LOWTHER.

GROUND THREE: PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT OF COUNSEL IN COMPELLING WITNESSES IN HIS FAVOR TO TESTIFY THE DECEASED ROBBERY VICTIM PURSUED MEDICAL SUICIDE AND PETITIONER IS ACTUALLY INNOCENCE OF FELONY MURDER.

SUPPORTING FACTS: PETITIONER CONSULTED WITH TRIAL COUNSEL HOPING TO HAVE THE ATTORNEY INVESTIGATE ALL FACTS AND WITNESSES SURROUNDING THE DEATH OF RICHARD A. LOWTHER AT THE AKRON CITY HOSPITAL. THE COUNSEL REFUSED TO INVESTIGATE ANY FACTS OR WITNESSES AROUND THE DEATH OF MR. LOWTHER. PETITIONER DISCOVERED HIS CODEFENDANT HAD THE SON OF MR. LOWTHER TESTIFY HIS FATHER DEMANDED ALL MEDICAL TREATMENT STOP. THE FAMILY UNDERSTOOD THIS WOULD BE MEDICAL SUICIDE AND AGREED TO STOP THE TREATMENT. THE COUNSEL ENTIRELY FAILED TO INVESTIGATE MR. LOWTHER DEMANDED ALL MEDICAL TREATMENT STOP AND SHOW THE DEATH WAS UNFORESEEABLE IN LIGHT OF THE ORDINARY EXPERIENCE. TO CALL WITNESSES TO TESTIFY TO MR. LOWTHER DID IN FACT DEMAND ALL TREATMENT STOP AND SUBJECT THE CASE TO ANY ADVERSARIAL TESTING.

GROUND FOUR: PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT OF COUNSEL TO HAVE INSTRUCTION TO THE LESSER INCLUDED OFFENSE OF RECKLESS HOMICIDE WERE [SIC] THE EVIDENCE SHOWS PETITIONER IS ACTUALLY INNOCENCE OF FELONY MURDER.

SUPPORTING FACTS: IN OHIO, THE FELONY MURDER DOCTRINE IS TO UTILIZE THE UNDERLYING FELONY AS A SUBSTITUTE FOR THE PETITIONER'S INTENT. THE GOVERNMENT INDICTED FOR FELONY MURDER WITH THE PREDICATE OFFENSES OF AGGRAVATED

BURGLARY AND ROBBERY INCLUDING RECKLESSLY INFLICTED OR ATTEMPTED TO INFLICT, SERIOUS PHYSICAL HARM TO RICHARD A. LOWTHER. THE UNDERLYING PREDICATE OFFENSES SUBSTITUTE THE ESSENTIAL ELEMENT OF RECKLESS AS PETITIONER'S INTENT. THE ESSENTIAL ELEMENT OF RECKLESS MURDER COMES FROM THE PREDICATE OFFENSE AND THE EVIDENCE SHOWS MR. LOWTHER DIED MUCH LATER DUE TO UNFORESEEABLE CONSEQUENCES VIEWED IN LIGHT OF ORDINARY EXPERIENCE RESULTING IN RECKLESS HOMICIDE.

GROUND FIVE: THE SENTENCE IMPOSED ON THE PETITIONER IS CONTRARY TO LAW AND PREJUDICIALLY DEPRIVES THE PETITIONER OF HIS DOUBLE JEOPARDY RIGHTS OF THE FIFTH AMENDMENT.

SUPPORTING FACTS: PETITIONER WAS CHARGED FOR FELONY MURDER AND THE REQUIRED ELEMENTS OF THE PREDICATE OFFENSES TO PROVE FELONY MURDER. THE GOVERNMENT RECOGNIZES THE CONDUCT OF THE PREDICATE OFFENSE CONSTITUTED THE COMMISSION OF FELONY MURDER. NO PERSON SHALL BE SUBJECT FOR THE SAME OFFENSES TO BE TWICE PUT IN JEOPARDY OF LIFE OR LIMB. THE SENTENCE IS CONTRARY TO THE LAW AND DOUBLE JEOPARDY CLAUSE AS CUMULATE AND MULTIPLE PUNISHMENT FOR THE SAME CONDUCT.

ECF Dkt. #1.

## IV.     **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.     **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the

date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.     Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to

-11-

dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

-12-

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and

actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (*i.e.*, exhausted) or because they were not properly presented to the state courts (*i.e.*, were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V.  STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 4, 2013, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus. The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-14-

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

-15-

D.   Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.   Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court has observed:

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition

-16-

for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.  ANALYSIS

### A.  Grounds One and Three

GROUND ONE:  PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL TO PRESENT TESTIMONY AND EVIDENCE OF HIS ACTUAL INNOCENCE TO FELONY MURDER.

SUPPORTING FACTS: THE PETITIONER WAS INVOLVED IN A BURGLARY AND ROBBERY WITH SEVERAL OTHERS, AND THE ROBBERY VICTIM RECEIVED A SEVERE NECK JURY [SIC]. HE WAS TRANSPORTED TO THE ROBINSON MEMORIAL HOSPITAL WERE [SIC] A CAT SCAN SHOWED A SPINAL CORD INJURY. HE WAS LIFE-FLIGHTED TO THE AKRON CITY HOSPITAL TO RECEIVE A SPINAL FUSION. THE OPERATION WAS A SUCCESS. THEN, IT APPEARS JUST DAYS LATER HE STARTING HAVING BREATHING PROBLEMS, AND PLACED ON A VENTILATOR. APPARENTLY, HE BECAME DISPIRITED OVER THE NEED FOR A VENTILATOR AND CONSULTED WITH FAMILY TO REMOVE THE VENTILATOR. APPARENTLY, THE FAMILY KNEW THIS MEANT MEDICAL SUICIDE AND STILL AGREED TO REMOVE THE VENTILATOR. APPARENTLY, HE DIED TEN TO TWELVE HOURS LATER OF HIS OWN CHOICE. THE TRIAL COUNSEL NEVER PRESENTED THE MEDICAL EVIDENCE THAT HE DEMANDED REMOVAL THE LIFE SUPPORTING VENTILATOR, OR CALL THE FAMILY TO INVESTIGATE HIM PURSUING MEDICAL SUICIDE. THE DECISION BY THE ROBBERY VICTIM TO PURSUE MEDICAL SUICIDE IS UNFORESEEABLE VIEWED IN LIGHT OF ORDINARY EXPERIENCE.


GROUND THREE: PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT OF COUNSEL IN COMPELLING WITNESSES IN HIS FAVOR TO TESTIFY THE DECEASED ROBBERY VICTIM PURSUED MEDICAL SUICIDE AND PETITIONER IS ACTUALLY INNOCENCE OF FELONY MURDER.

SUPPORTING FACTS: PETITIONER CONSULTED WITH TRIAL COUNSEL HOPING TO HAVE THE ATTORNEY INVESTIGATE ALL FACTS AND WITNESSES SURROUNDING THE DEATH OF RICHARD A. LOWTHER AT THE AKRON CITY HOSPITAL. THE COUNSEL REFUSED TO INVESTIGATE ANY FACTS OR WITNESSES AROUND THE DEATH OF MR. LOWTHER. PETITIONER DISCOVERED HIS CODEFENDANT HAD THE SON OF MR. LOWTHER TESTIFY HIS FATHER DEMANDED ALL MEDICAL TREATMENT STOP. THE FAMILY UNDERSTOOD THIS WOULD BE MEDICAL SUICIDE AND AGREED TO STOP THE TREATMENT. THE COUNSEL ENTIRELY FAILED TO INVESTIGATE MR. LOWTHER DEMANDED ALL MEDICAL TREATMENT STOP AND SHOW THE DEATH WAS UNFORESEEABLE IN LIGHT OF THE ORDINARY EXPERIENCE. TO CALL WITNESSES TO

-17-

TESTIFY TO MR. LOWTHER DID IN FACT DEMAND ALL TREATMENT STOP AND SUBJECT THE CASE TO ANY ADVERSARIAL TESTING.

Petitioner's first and third grounds for relief are predicated upon the legal argument that Lowther's decision to terminate life support constitutes an intervening act that breaks the causal link between Petitioner's criminal acts and Lowther's death.[3]  However, Petitioner concedes that he did not raise the issues presented in Grounds One and Three before the Ohio Court of Appeals in his direct appeal. Because the claims were not raised on direct appeal, they would be barred by the Ohio rule of *res judicata*. *Lott v. Coyle*, 261 F.3d 594, 611-612 (6th Cir.2001), cert. denied, 534 U.S. 1147, 122 S.Ct. 1106, 151 L.Ed.2d 1001 (2002); *Rust*, 17 F.3d at 160-161; *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶ 9). *Res judicata* would bar Petitioner from litigating an issue that could have been raised on direct appeal. *Perry*, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

The Ohio rule of *res judicata* satisfies the first three factors in *Maupin*. See *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001). The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's

---

[3]In the Judgment Entry denying Petitioner's *Murnahan* application, ECF Dkt. #7-20, the Eleventh District Court of Appeals cited with favor its opinion in *State v. Dukes*, 2011 WL 6938589, *6 (11th Dist. December 30, 2011), which read, in pertinent part:

> [T]he law is clear that "self-inflicted harm attributable to a victim's weakened conditions are quite normal and do not break the causal chain." *State v. Smith*, 4th Dist. No. 06 CA2893, 2007-Ohio-1884, at ¶29 (citations omitted).  Stated otherwise, a victim's response to conditions created by the defendant's criminal actions, such as the decision to refuse medical treatment necessitated by the defendant's conduct, does not typically break the chain of causation."  *United States v. Martinez*, (C.A.6, 2009), 588 F.3d 301,302 (citations omitted.) "Courts have confronted whether a victim's removal from life support renders a homicide verdict against the weight of the evidence and have rejected the contention that there was insufficient evidence to support a conviction when the victim expired following his or her removal from life support." *State v. Pelham* (2003), 176 N.J. 448, 462-463, 824 A.2d 1082, and the cases cited therein; *People v. Caldwell* (1998), 295 Ill.App.3d 172, 180, 229 Ill.Dec. 675, 692 N.E.2d 448 ("[t]he cause of her death was not the removal of the ventilator, but the criminal act that defendant performed which generated the need for the life support in the first instance").

procedural rule. *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

Because Petitioner has not shown cause, it is unnecessary to consider the issue of prejudice. *Murray*, 477 U.S. at 494; *Shabazz v. Ohio*, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998). The undersigned recommends that the Court find that the issues presented in Grounds One and Three have been procedurally defaulted.

Furthermore, although Petitioner argued ineffective assistance of appellate counsel in his *Murnahan* application, based upon the issues raised in Grounds One and Three, the Sixth Circuit has held that a *Murnahan* application "cannot function to preserve the underlying substantive claim" for habeas review. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir.2008) (internal quotation marks omitted); see also *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir.2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir.2005). *Murnahan* proceedings permit criminal defendants to apply to reopen their appeals "based on a claim of ineffective assistance of appellate counsel." Ohio R.App. P. 26(B); see also Ohio Sup.Ct. Prac. R. 11.06. In his or her application, the defendant must identify "[o]ne or more assignments of error ... that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation." Ohio R.App. P. 26(B)(2)(c). The application will be granted if the court finds a "genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." Ohio R.App. P. 26(B)(5).

Once an application has been granted, the court will vacate its prior judgment and issue a new judgment if it concludes that counsel's performance was deficient and prejudiced the defendant. Ohio R.App. P. 26(B)(5) & (9). Thus, by the text of the Ohio rules, *Murnahan* proceedings allow defendants to re-open their appeals and raise new substantive claims only if their failure to raise these claims in the first instance was due to ineffective assistance of their appellate counsel. See *Wogenstahl*, 668 F.3d at 338. The Supreme Court of Ohio denied Petitioner's application to re-open his appeal finding that Petitioner had not made a threshold showing of ineffective assistance.

Petitioner did not fairly present the issues raised in Grounds One and Three to the state appellate court, nor did he preserve the claims through his *Murnahan* application. As a consequence,

the undersigned also recommends that the trial court find that Petitioner has procedurally defaulted his claims in Grounds One and Three on this basis.

### B.     Grounds Two and Five

GROUND TWO: PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHT TO HAVE SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT ON FELONY MURDER BEYOND A REASONABLE DOUBT.

SUPPORTING FACTS: PETITIONER WAS INDICTED AFTER RICHARD A. LOWTHER DIED FOR MURDER FROM THE PREDICATE OFFENSES OF AGGRAVATED BURGLARY AND ROBBERY INCLUDING RECKLESSLY INFLICTED OR ATTEMPTED TO INFLICT, SERIOUS PHYSICAL HARM. IN OHIO, THE VERY PURPOSE OF THE FELONY MURDER DOCTRINE IS TO UTILIZE THE PREDICATE OFFENSES AS A SUBSTITUTE FOR THE MURDEROUS INTENT AND RAISE AN UNINTENTIONAL KILLING TO THE LEVEL OF MURDER. THE EVIDENCE PROFFERED AT TRIAL DOES NOT SHOW THE PETITIONER ACTED WITH HEEDLESS INDIFFERENCE TO THE CONSEQUENCES AND DISREGARDS A KNOWN RISK THAT CAUSED THE RECKLESS HOMICIDE OF RICHARD A. LOWTHER.

GROUND FIVE: THE SENTENCE IMPOSED ON THE PETITIONER IS CONTRARY TO LAW AND PREJUDICIALLY DEPRIVES THE PETITIONER OF HIS DOUBLE JEOPARDY RIGHTS OF THE FIFTH AMENDMENT.

SUPPORTING FACTS: PETITIONER WAS CHARGED FOR FELONY MURDER AND THE REQUIRED ELEMENTS OF THE PREDICATE OFFENSES TO PROVE FELONY MURDER. THE GOVERNMENT RECOGNIZES THE CONDUCT OF THE PREDICATE OFFENSE CONSTITUTED THE COMMISSION OF FELONY MURDER. NO PERSON SHALL BE SUBJECT FOR THE SAME OFFENSES TO BE TWICE PUT IN JEOPARDY OF LIFE OR LIMB. THE SENTENCE IS CONTRARY TO THE LAW AND DOUBLE JEOPARDY CLAUSE AS CUMULATE AND MULTIPLE PUNISHMENT FOR THE SAME CONDUCT.

Petitioner raised assignments of error in state court predicated upon insufficient evidence and double jeopardy.  However, Petitioner's state sufficiency argument was based upon his theory that the purpose for entering the house was completed before the victim was assaulted and, as a consequence, the physical harm caused to the victim was not the proximate cause of the other crimes. Petitioner's state double jeopardy argument was based upon the trial court's failure to merge the aggravated burglary and aggravated robbery convictions with the felony murder conviction. Accordingly, Petitioner failed to fairly present the arguments in Grounds Two and Five to the state court. The Ohio rule of *res judicata* satisfies the first three factors in *Maupin*. See *Jacobs, supra*.

Because Petitioner has not shown cause, it is unnecessary to consider the issue of prejudice. *Murray*, 477 U.S. at 494; *Shabazz v. Ohio*, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998).

Petitioner did not fairly present the issues raised in Grounds Two and Five to the state appellate court, nor did he preserve the claims through his *Murnahan* application. Accordingly, the undersigned recommends that the Court find that Grounds Two and Five are procedurally defaulted.

### C.    **Ground Four**

GROUND FOUR: PETITIONER WAS PREJUDICIALLY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT OF COUNSEL TO HAVE INSTRUCTION TO THE LESSER INCLUDED OFFENSE OF RECKLESS HOMICIDE WERE [SIC] THE EVIDENCE SHOWS PETITIONER IS ACTUALLY INNOCENCE OF FELONY MURDER.

SUPPORTING FACTS: IN OHIO, THE FELONY MURDER DOCTRINE IS TO UTILIZE THE UNDERLYING FELONY AS A SUBSTITUTE FOR THE PETITIONER'S INTENT. THE GOVERNMENT INDICTED FOR FELONY MURDER WITH THE PREDICATE OFFENSES OF AGGRAVATED BURGLARY AND ROBBERY INCLUDING RECKLESSLY INFLICTED OR ATTEMPTED TO INFLICT, SERIOUS PHYSICAL HARM TO RICHARD A. LOWTHER. THE UNDERLYING PREDICATE OFFENSES SUBSTITUTE THE ESSENTIAL ELEMENT OF RECKLESS AS PETITIONER'S INTENT. THE ESSENTIAL ELEMENT OF RECKLESS MURDER COMES FROM THE PREDICATE OFFENSE AND THE EVIDENCE SHOWS MR. LOWTHER DIED MUCH LATER DUE TO UNFORESEEABLE CONSEQUENCES VIEWED IN LIGHT OF ORDINARY EXPERIENCE RESULTING IN RECKLESS HOMICIDE.

Like his other claims, Petitioner failed to fairly present the argument in Ground Four to the state court. The Ohio rule of *res judicata* satisfies the first three factors in *Maupin*. See *Jacobs, supra.* Because Petitioner has not shown cause, it is unnecessary to consider the issue of prejudice. *Murray*, 477 U.S. at 494; *Shabazz v. Ohio*, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998).

Petitioner did not fairly present the issues raised in Ground Four to the state appellate court. Accordingly, the undersigned recommends that the Court find that Ground Four is procedurally defaulted.

### D.    **Fundamental Miscarriage of Justice**

Throughout his petition, Petitioner claims that he is "actually innocent."  A claim of "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas

-21-

petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

A fundamental miscarriage of justice results when one who is "actually" innocent is convicted. *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir.2011).  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). "Actual innocence means factual innocence, not merely legal insufficiency.  *Luster v. United States*, 168 F.3d 913, 915 (6th Cir.1999).

A petitioner can satisfy this burden by showing that there has been "an intervening change in the law that establishes [his] actual innocence." See *United States v. Peterman*, 249 F.3d 458, 462 (6th Cir.2001). Otherwise, "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The *Schlup* Court counseled that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

Here, Petitioner articulates a legal insufficiency argument rather than an "actual innocence" argument.  In other words, Petitioner concedes that he caused the victim's injuries but argues instead that the victim's decision to terminate life support constituted an intervening cause that breaks the causal link between Petitioner's criminal acts and Lowther's death.  Petitioner has failed to show an intervening change in the law that decriminalized his conduct or produced any new reliable evidence to demonstrate his factual innocence.  Accordingly, the undersigned recommends that the Court find that all of the claims in the petition are barred by the doctrine of procedural default.

**VII.**   **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT the motion to dismiss petition, ECF Dkt. #7, and DISMISS the instant petition in its entirety with prejudice.


DATE: August 11, 2014                                  */s/ George J. Limbert*
                                                       GEORGE J. LIMBERT
                                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).